**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 7 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| N. M.; STACIE MILLER, Guardian ad Litem for minor child, N.M.; ESTATE OF VINTON MILLER, <br><br>       Plaintiffs - Appellees, <br><br>  v. <br><br> CLAYTON GUILLEMIN, California Highway Patrol Officer, <br><br>       Defendant - Appellant, <br><br> and <br><br> COUNTY OF PLACER, a municipal corporation, PLACER COUNTY SHERIFF, a public entity, ERIC HINTZE, Placer County Sheriff's Officer Deputy Coroner, CALIFORNIA HIGHWAY PATROL, a public entity, CALIFORNIA DEPARTMENT OF PARKS AND RECREATION, MATTHEW YARBROUGH, California State Parks Officer, EVAN MATSHES, NAAG FORENSIC, PC, an entity, BROOKE RITZMAN, <br><br>       Defendants. | No. 25-5890 <br><br> D.C. No. 2:25-cv-01389-WBS-JDP <br><br> MEMORANDUM[*] |

---

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted July 10, 2026
San Francisco, California

Before: MURGUIA, Chief Judge, and McKEOWN and PAEZ, Circuit Judges.

This § 1983 action arises from the death of Vinton Miller ("Miller"), who was shot and killed by California State Parks Officer Matthew Yarbrough. In this case, Miller's wife, Stacie Miller ("Plaintiff"), alleges that California Highway Patrol Officer Clayton Guillemin ("Guillemin"), who was also present at the scene of the shooting, failed to provide reasonable medical care to Miller in violation of the Fourth Amendment. Plaintiff further alleges that Guillemin violated her Fourteenth Amendment right to a familial relationship with her husband and violated California's Tom Bane Civil Rights Act ("Bane Act").

Guillemin appeals the district court's denial of qualified immunity on his motion to dismiss the Fourth Amendment and Fourteenth Amendment claims. He also appeals the district court's denial of his motion to dismiss Plaintiff's Bane Act claim. We have jurisdiction under the collateral order doctrine to review a district court's denial of a qualified immunity defense at the motion to dismiss stage. 28 U.S.C. § 1291; *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023). We review such a denial de novo. *Polanco*, 76 F.4th at 925. We also have jurisdiction over

Plaintiff's Bane Act claim under the doctrine of pendent appellate jurisdiction because the rulings related to that claim and Plaintiff's Section 1983 claim are inextricably intertwined. *See Williamson v. City of National City*, 23 F.4th 1146, 1151 (9th Cir. 2022). We reverse the district court's denial of qualified immunity and direct the district court to dismiss the remainder of Guillemin's appeal.

**1.** We first address whether we may properly consider Guillemin's dash cam video footage and the video surveillance from the Olympic Valley Events Center in reviewing the district court's denial of qualified immunity. Plaintiff makes repeated and specific references to what can be heard and seen in both videos as a basis for her allegations regarding Guillemin and Miller's conduct throughout the complaint. Because Plaintiff "refers extensively" to both videos such that the footage "forms [a] basis of" the Fourth Amendment, Fourteenth Amendment, and Bane Act claims, the videos should be incorporated by reference into the complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). Plaintiff also does not dispute the authenticity of the videos or their relevance. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Therefore, we may properly consider the videos in determining whether Guillemin is entitled to qualified immunity.

25-5890

**2.** With respect to Plaintiff's Fourth Amendment claim, we conclude that Guillemin is entitled to qualified immunity because he did not violate Miller's clearly established rights. For the unlawfulness of an officer's conduct to be "clearly established," it must be the case that, "at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he [wa]s doing' [wa]s unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

We have previously held that "it is clearly established that officers must seek to provide an injured detainee or arrestee with objectively reasonable medical care in the face of medical necessity creating a substantial and obvious risk of serious harm, including by summoning medical assistance." *D'Braunstein v. Cal. Highway Patrol*, 131 F.4th 764, 771 (9th Cir. 2025). Given the significance of Miller's injuries—namely, a gunshot wound to the back—Miller faced a "substantial risk of serious harm" due to a "serious medical need," such that a failure to summon the necessary medical attention "could result in further significant injury." *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

However, Plaintiff alleges in her complaint that paramedics were summoned "shortly after" the shooting, and the videos incorporated into the complaint confirm that paramedics were summoned within two minutes. Taking Plaintiff's allegations

4                                                                                    25-5890

as true and construing them in the light most favorable to her, there was no clearly established precedent that officers were constitutionally required to summon *additional* medical assistance beyond paramedics or to otherwise transport an injured arrestee to the hospital once paramedics arrived at the scene and began providing care. *See Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1098–99 (9th Cir. 2006) (explaining that where "officers promptly requested medical assistance . . . the Constitution required them to do no more"). Because the right was not clearly established, Guillemin is entitled to qualified immunity.

**3.** Plaintiff expressly conceded her Fourteenth Amendment claim for loss of familial association in her briefing before the district court. The district court abused its discretion by not dismissing Plaintiff's Fourteenth Amendment claim on this basis. *See Hilao v. Estate of Marcos*, 393 F.3d 987, 993 (9th Cir. 2004) (confirming that "[a] party . . . is bound by concessions made in its brief[ing]"). We therefore reverse the district court's decision denying dismissal of Plaintiff's Fourteenth Amendment loss of familial association claim.

**4.** Plaintiff alleged a Bane Act violation based upon the same facts as her Fourteenth Amendment claim. A Bane Act claim "requires proof of an underlying constitutional violation." *Williamson*, 23 F.4th at 1155 (citing *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018)). Because Plaintiff expressly

withdrew her Fourteenth Amendment claim, we reverse the district court's decision denying dismissal of Plaintiff's Bane Act claim.

**5.** For the above reasons, we conclude that the district court erred in denying Guillemin qualified immunity.  We also hold that the district court erred in failing to dismiss Plaintiff's Fourteenth Amendment and Bane Act claims. On remand, the district court is directed to dismiss Plaintiff's Fourth Amendment, Fourteenth Amendment, and Bane Act claims against Guillemin.

**REVERSED** and **REMANDED** with instructions.